# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ATIF N. RANA, individually and on behalf of others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 11 C 4280 |
| COLLEGE ADMISSIONS ASSISTANCE, LLC, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Atif Rana has sued College Admissions Assistance, LLC (CAA). He asserts a claim under the Fair Credit Reporting Act (FCRA) and seeks to represent several classes of Illinois residents with similar FCRA claims against CAA. CAA has moved to dismiss the case to enforce a forum selection clause or, in the alternative, to transfer the case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court denies CAA's motion.

## Background

CAA provides college planning services. It hires enrollment consultants, whom it characterizes as independent contractors, to sign up customers for its services.

In March 2011, Rana interviewed with CAA for a position as an enrollment consultant. He alleges that after the interview, CAA told him that he could soon begin training. CAA sent Rana paperwork that he had to complete. Among the documents

Rana completed were a proposed contract and an authorization for CAA to conduct a background check. In relevant part, the proposed contract provided:

> 1. <u>Term</u>: This Agreement will become effective upon signing and will continue until either party gives the other party ten (10) days written notice of its termination.
> . . .
>
> 18. <u>Governing Law</u>: The Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and Independent Contractor agrees to subject himself/herself to the exclusive jurisdiction of the State District Courts in Dallas County, Texas.

Def. Ex. 2-A at 4, 6. The proposed contract also contained, on its final page, lines for the signatures of Rana and a CAA officer. *Id.* at 7. Rana signed the proposed contract on March 9, 2011.

Rana did not hear from CAA and therefore contacted the company to ask about the status of his paperwork. CAA told him that it would not hire him for the enrollment consultant position because a background check had revealed that he had a criminal conviction. Rana asked for a copy of the background check report, because he believed the information was erroneous. Rana received a copy of the report and determined that the information on it was inaccurate. He was able to contact Reliable Background Screening, the company that had performed the background check, and have the inaccurate information removed.

CAA never hired Rana as a enrollment consultant and never signed the proposed contract.

## Discussion

CAA contends that Rana's individual and class claims should be dismissed

under Federal Rule of Civil Procedure 12(b)(3) because he agreed to a forum selection clause requiring that the claims be brought in Texas state court. CAA argues in the alternative that the Court should transfer Rana's claims under 28 U.S.C. § 1404(a).

**A.      Forum selection clause**

Rana argues that the forum selection clause is not enforceable against him because it is not part of a valid contract. He contends that no binding contract was never formed and also that it lacks consideration.

The parties cite both Illinois and Texas law regarding the validity of the alleged contract. The proposed contract contains a Texas choice of law clause. "Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). Illinois courts have also suggested that a contract's choice of law clause governs the question of whether the parties formed a valid contract. *Sound of Music Co. v. 3M Co.*, 477 F.3d 910, 915 (7th Cir. 2007) (suggesting that contract formation is a question under Minnesota law when contract contains a Minnesota choice of law clause); *Thomas*, 381 F.3d at 705 (suggesting that choice of law clause governs on issues related to contract validity); Restatement (Second) of Conflict of Laws § 200 (1971) (validity of a contract is determined by law chosen by the parties). The Court will thus apply Texas law to determine whether there is a valid contract, while noting that neither party asserts that there is any significant difference between Illinois and Texas law.

It is undisputed that no employee of CAA ever signed the proposed contract.

3

> [T]he absence of a signature on a contract does not necessarily destroy its validity. As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract.

*ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane*, 115 S.W.3d 287, 292 (Tex. App. 2003); *see also, Lynge v. Kunstmann*, 94 Ill. App. 3d 689, 694, 418 N.E.2d 1140, 694 (1981) (signature can be a condition precedent to formation of contract).

Here, the signature of CAA was a condition precedent to the formation of a contract. The proposed contract states that it "will become effective upon signing." Def. Ex. 2-A at 4; *see Copeland v. KB Home*, No. Civ. A. 3:03-CV-227-L, 2004 WL 1778949, at *2–3 (N.D. Tex. Aug. 4, 2004) (under Texas law, binding agreement was not formed where proposed agreement provided that parties acknowledged a term by initialing, but it was not initialed by one party). The contract also contained a line for a signature by a CAA representative. *Id.* at 7. *See Scaife v. Associated Air Ctr., Inc.*, 100 F.3d 406, 411 (5th Cir. 1996) (under Texas law, signatures were required when contract had signature blocks and parties made specific arrangements so that the contract would be signed). Without CAA's signature, the proposed contract was never effective and the forum selection clause is therefore inoperative.

CAA never clearly addresses Rana's signature argument. CAA asserts, however, that it began performance under the contract and that Rana accepted a benefit of the contract and therefore should be estopped from denying its existence now. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (acceptance of benefits is an equitable principle under which a party cannot assert a

4

position inconsistent with a previous position under which he received a benefit). CAA argues that it began performance by considering Rana for a position as an enrollment counselor.

It is true that "if one party signs [a contract], the other may accept by [its] deeds, conduct, or acquiescence." *DeClaire v. G&B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App. 2008) (party acquiesced to note terms by taking possession of note and transferring funds to debtor). CAA's argument, however, ignores that the proposed contract expressly provided that it would not be effective until it was signed. Furthermore, neither the proposed contract nor the accompanying checklist of documents stated that Rana had to complete them to be considered for a position or that the proposed contract obligated CAA to consider Rana for a position. Def. Ex. 2-A at 4–8; Pl. Ex. 1-D. CAA does not contend that it accepted the proposed contract by performing any of its obligations the document actually lists, such as by providing specialized training or paying Rana for work he undertook on CAA's behalf. Def. Ex. 2-A at 4–5; *cf. Sibley v. Brentwood Inv. Dev. Co.,* 356 S.W.3d 659, 663–64 (Tex. App. 2011) (even though landlord did not sign lease, parties accepted lease by performance when renter moved into space, operated a business in it, and made several rent payments); *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930–31 (S.D. Tex. 2008) (under Texas law, employment agreement was enforceable even though employer had not signed it, because it contained "no language . . . indicating that the agreement would not become effective until [employer] signed the document" and employer acted in accordance with agreement by continuing to employ the plaintiffs).

CAA also argues that "a forum selection clause is viewed as a separate contract

5

that is severable from the agreement in which it is contained." *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1238 (11th Cir. 2011). In *Rucker*, the court held that even though an contract was void as against public policy under Alabama law, the forum selection clause it contained was still valid. *Id.* at 1237–38. Similarly, in *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006), the Seventh Circuit held that it could enforce a forum selection clause without determining whether the contract containing it was void as against public policy on the ground that it created a fraudulent pyramid scheme. *Id.* at 762. The court noted, however, that "a forum selection clause can be found invalid because the clause itself was procured by fraud." *Id.*

In the current case, the proposed contract states that it will not be effective until it is signed. Def. Ex. 2-A at 4. There is nothing in the proposed contract to indicate that the forum selection clause, or any clause of the contract, would be effective before the proposed contract was signed. To the contrary, signature was a condition precedent to the entire proposed contract, including the forum selection clause. Unlike the contracts discussed by the courts in *Rucker* and *Muzumdar*, this is not a case in which certain provisions of a contract might be unenforceable as against public policy but the forum selection clause might survive because it does not violate public policy.

In short, no contract between Rana and CAA ever came into existence. For this reason, CAA cannot enforce the forum selection clause contained in the proposed contract. Accordingly, the Court denies CAA's motion to dismiss the case. The Court need not consider whether the proposed contract, if signed, would have been supported by adequate consideration.

**B.     Transfer**

CAA argues in the alternative that this case should be transferred to the Northern District of Texas. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this case could have been brought in the Northern District of Texas. The Court must therefore consider whether transfer would serve the convenience of the parties and witnesses and the interest of justice.

> With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to sources of proof.
>
> The "interest of justice" is a separate element of the transfer analysis that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy.

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003) (internal quotation marks omitted).

In regard to convenience, CAA contends that many of its employees, and therefore many of the witnesses, are located in the Northern District of Texas. Generally, however, "[m]ore weight is afforded non-party witnesses than witnesses

within the control of the parties, as it is presumed that party witnesses will appear voluntarily." *First Nat'l Bank v. El Camino Res., Ltd.*, 47 F. Supp. 2d 902, 913 (N.D. Ill. 2006); *accord Nalco Co. v. Envtl. Mgmt.*, 694 F. Supp. 2d 994, 999 (N.D. Ill. 2010). CAA also argues that the documents relevant to the case are located in Texas, but "the location of a party's documents and records is usually not a very persuasive reason to transfer a case." *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1045 (N.D. Ill. 2007) (brackets and internal quotation marks omitted).

On the other hand, Rana is a resident of Illinois, as are the classes of plaintiffs he proposes to represent. *See Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010) (stating that plaintiffs in a national class action are not entitled to much deference in their choice of forum, but suggesting that plaintiffs in a state-wide class action are). Further, Rana states that the source of the erroneous background check was a company in Arizona, and the supposed criminal conviction was in Michigan. He contends, and CAA does not dispute, that witnesses and evidence may exist in both of those states. In sum, convenience of the parties and witnesses does not favor transfer to Texas to any significant extent.

As to the interest of justice, CAA makes two arguments in favor of transfer. First, CAA contends that a central issue will be whether Rana and the other plaintiffs were independent contractors, as the proposed contract provides, and thus, it contends, not covered by the relevant provisions of the FCRA. CAA argues that determining whether plaintiffs are independent contractors is a matter of Texas law under the proposed contract, while Rana claims that it is a matter of federal law under the FCRA. If it is a matter of Texas law, a Texas federal court is likely to be more familiar with the relevant

8

law. This fact does not strongly support transfer, however, because CAA offers nothing to suggest Texas law regarding whether a person is an independent contractor is particularly different from Illinois law or otherwise difficult to apply.

CAA also argues that statistics complied by the Administrative Office of the United States Courts show that cases that go to trial conclude more quickly in the Northern District of Texas than in this district. Def. Ex. 3 at 2. This argument does not strongly support transfer, for two reasons. First, the disparity exists only for the relatively minuscule percentage of cases that go to trial. The time to disposition for all cases is approximately the same in both districts. *Id.* Second, the statistics incorporate all civil cases and do not distinguish among case types. Thus they provide little indication of which court could more quickly resolve this particular type of case. *Id.*

In short, some of the relevant factors suggest that the convenience of the parties and witnesses and the interest of justice would be served by transfer to the Northern District of Texas. The balance, however, is not strongly in favor of CAA. Granting due deference to Rana's choice of forum, the Court declines to transfer the case.

**C.    Class claim**

CAA contends that Rana's class claims must be pursued in Texas, because the potential class plaintiffs are not similarly situated to Rana. The question of whether Rana has claims "typical of the claims . . . of the class" is not relevant to the current decision regarding whether to dismiss or transfer the case but is instead a matter for the Court to address if and when it decides whether to certify any of his proposed classes. Fed. R. Civ. P. 23(a)(3).

9

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss or transfer [docket no. 20]. The case is set for a status hearing on April 23, 2012 at 8:45 a.m. for the purpose of setting a discovery and pretrial schedule. Defendant's out-of-town counsel may participate by telephone. Counsel are directed to discuss and attempt to agree on a proposed schedule in advance of the status hearing.

_____
    MATTHEW F. KENNELLY
    United States District Judge

Date: April 13, 2012